**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| WILLIAM FRANKLIN NAJAR, | ) |
| | ) |
| Petitioner, | ) CIV 10-01981 PHX SRB (MEA) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) |
| CHARLES L. RYAN, TERRY GODDARD, | ) |
| | ) |
| Respondents. | ) |
| | ) |
| _____ | ) |

**TO THE HONORABLE SUSAN R. BOLTON:**

On or about September 15, 2010, Petitioner filed a pro se petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 15) on April 14, 2011. Petitioner's counsel in this matter entered a notice of appearance on May 11, 2011. See Doc. 16. On June 17, 2011, through counsel, Petitioner filed a reply (Doc. 20) to the answer.

**I Procedural History**

On July 31, 1998, Petitioner and three co-defendants were indicted on one count of first-degree premeditated murder or, alternatively, first-degree felony murder; one count of conspiracy to commit first-degree murder or armed robbery; one count of armed robbery; one count of theft; and one count of

arson of an occupied structure, i.e., a vehicle. <u>See</u> Answer, Exh. A. Petitioner and his co-defendants were alleged to have shot and killed Michael Decker and to have taken his belongings[1] when they encountered their victim at a public campground within Maricopa County. <u>Id.</u>, Exh. K. The charge of theft was dismissed prior to trial as being a lesser-included offense of the charge of armed robbery. <u>See</u> <u>id.</u>, Exh. K.

Petitioner was tried along with one co-defendant.[2] At the close of the prosecution's case, the trial court dismissed the charge of arson as against Petitioner because the prosecution had failed to present sufficient evidence to give this charge to the jury. <u>Id.</u>, Exh. D. At the conclusion of the thirteen-day trial, the jury found Petitioner guilty of

---

[1] The possessions found by the jury to have been stolen were a vehicle, an automatic weapon, a handgun, and marijuana and/or methamphetamine. Answer, Exh. E.

[2] At least one of the other co-defendants testified at the trial of Petitioner and his co-defendant. A fifteen-year-old who participated in the crimes but who was not charged in the indictment also testified at the trial. The testimony indicated that the four co-defendants discussed robbing and shooting the victim at least one day prior to the date the victim was killed and that Petitioner initially indicated an unwillingness to participate in murder. The testimony indicated that on the day of the crime Petitioner aimed a gun at the victim, lowered the gun, and then raised the gun again and shot the victim in the back of the head or neck. The testimony indicated that, after Petitioner shot the victim in the back of the head, his trial co-defendant shot the victim in the face. The co-defendants then buried the victim's body and destroyed evidence of the crime. The co-defendants then, as pre-arranged, each took an item of the victim's belongings. Petitioner later confessed his participation in the crime to an individual who testified at his trial regarding that confession. Petitioner's trial co-defendant returned to the scene of the crime after the crime, bringing along friends to whom he confessed and to whom he displayed where the victim's body was buried.

first-degree murder. <u>Id.</u>, Exh. E.[3] Petitioner was acquitted on the charge of conspiracy to commit first-degree murder. The jury found Petitioner not guilty of armed robbery, but guilty of theft as a lesser-included offense of armed robbery. <u>Id.</u>, Exh. E.[4]

The state originally noticed its intention to seek the death penalty if Petitioner was convicted of first-degree murder but withdrew from this intention following Petitioner's conviction. <u>Id.</u>, Exh. B & F. After a sentencing hearing, the state court found as mitigating factors Petitioner's age (Petitioner was born in 1982 and was sixteen years of age at the time of the crimes) and his dysfunctional family experience. <u>Id.</u>, Exh. G. Although the state court also noted there was some evidence of Petitioner's inability to appreciate the wrongfulness of his conduct, and some evidence of alcohol and drug impairment and an underdeveloped prefrontal cortex, the trial court found this evidence unpersuasive with regard to establishing these mitigating factors as a matter of law.

---

[3] In its notice of withdrawal of its intent to seek the death penalty, the state indicated the jury had found Petitioner guilty of first-degree murder under the theory of premeditation, rather than pursuant to the theory of felony murder predicated on death caused in the course of a robbery. <u>See</u> Answer, Exh. F. However, it appears that the jury was instructed as to both theories of culpability and that the jury did not specify under which theory it found Petitioner guilty. <u>See</u> <u>id.</u>, Exh. L (Petitioner's brief on direct appeal to the Arizona Supreme Court). Petitioner did not dispute, however, that he had raised and lowered a gun aimed at the victim, although the victim did not see him do this, prior to shooting the victim and that he encouraged his co-defendant to also shoot the victim. <u>Id.</u>, Exh. L.

[4] Petitioner's co-defendant was also found guilty of first-degree murder and theft and acquitted on the charges of conspiracy and armed robbery, and also found guilty of arson. Answer, Exh. E.

As aggravating factors, the state court found the presence of accomplices and that the murder was committed in expectation of the receipt of items of pecuniary value. The state court also found as aggravating factors the severe emotional harm caused the victim's mother at the loss of her only son and the helplessness of the victim. Id., Exh. G.

The state court found the aggravating factors outweighed the mitigating factors and sentenced Petitioner to natural life without the possibility of parole pursuant to his conviction on the charge of first-degree murder. The state court sentenced Petitioner to a concurrent one-year term of imprisonment pursuant to his conviction on the theft charge.[5]

Petitioner took a timely direct appeal of his convictions and sentences. Id., Exh. H. Petitioner argued that the trial court erred in denying his motion for a directed judgment of acquittal because there was insufficient evidence to demonstrate that he intended to rob his victim at the time of the shooting. Id., Exh. I. Petitioner asserted the trial court should have granted his motion for a directed verdict of not guilty as to the armed robbery charge as well as the felony-murder theory, because that charge was predicated upon the armed robbery. Id., Exh. I. In response to Petitioner's appellate brief, the state argued that there was sufficient

_____

[5] At the sentencing hearing Petitioner also entered a guilty plea in a different 1998 criminal matter, to one count of burglary, one count of theft, and one count of criminal damage. The charges arose from an incident in which Petitioner took weapons and a vehicle from the home of an acquaintance. Answer, Exh. F.

-4-

evidence to find Petitioner guilty under either the theory of premeditated murder or the theory of felony murder. Additionally, the state asserted that Arizona law did not require the jury to establish under which theory it found Petitioner guilty of murder, nor did Arizona law require that a defendant could not be found guilty of felony murder when also acquitted of the underlying felony in favor of a lesser-included offense. See id., Exh. J.

On November 14, 2002, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences in a memorandum decision. The appellate court concluded the evidence sufficiently supported the inference that Petitioner, and his co-defendants, had formulated the intent to take the victim's property before or at the time of the shooting. Id., Exh. K.[6] Accordingly, the Court of Appeals determined, the trial court did not err in denying Petitioner's motion for judgment of acquittal on the theory of first-degree felony murder.

Petitioner sought review of the Court of Appeals' decision affirming his convictions and sentences by the Arizona Supreme Court, which denied review on February 12, 2003. Id.,

---

[6] Petitioner's argument was predicated on the fact that Petitioner had initially repudiated the idea of killing the victim in order to take his property when the idea was suggested by a co-defendant, and that his intent in going to the victim's campsite with the others was to smoke marijuana with the victim. The testimony indicated that, after the co-defendants smoked marijuana with the victim they engaged in shooting guns at targets with the victim and then, after a brief time, killed the victim and took his property. The Arizona Court of Appeals concluded that "the manner in which the murder occurred and the actions of the group immediately afterward supported a conclusion that the killing was perpetrated as part of a robbery." Answer, Exh. K at 6.

-5-

Exh. O. Petitioner did not, apparently, seek a writ of certiorari from the United States Supreme Court.

On March 11, 2003, Petitioner commenced a timely action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. Id., Exh. Q. Petitioner was appointed counsel in his Rule 32 proceedings, who notified the state court that Petitioner wished to represent himself because they had disagreed on what issues should be raised in the petition. Id., Exh. S.

On October 23, 2003, and again on March 5, 2004, Petitioner filed pro per briefs in his Rule 32 action alleging: (1) he was entitled to re-sentencing pursuant to Arizona Revised Statutes § 13-703 and Rule 32.1(b), Arizona Rules of Criminal Procedure, because he was improperly sentenced for first-degree murder under Arizona Revised Statutes § 13-702; (2) his conviction should be vacated pursuant to Rule 32.1(a), because he was "ineffectively represented by incompetent counsel during the trial process" in violation of his Sixth Amendment rights; and (3) his conviction should be vacated pursuant to Rule 32.1(e), because newly discovered evidence existed that substantially undermined "critical" trial testimony.[7] Id., Exh. R & Exh. U.

On July 19, 2004, the state trial court issued a minute entry granting Petitioner relief with regard to his sentencing.

_____

[7] Petitioner argued that his mathematical calculations proved that he could not have shot the victim as the co-defendant testified, with regard to the angle of the bullet entry wound and the victim's height, etc.

1  <u>Id.</u>, Exh. X.  Specifically, the appellate court accepted

2  Petitioner's argument that he was entitled to a new sentencing

3  pursuant to <u>Arizona v. Viramontes</u>, 204 Ariz. 360, 361-62, 64

4  P.3d 188, 189-90 (2003).  <u>Id.</u>, Exh. X.[8]

5

6  _____

[8] The initial sentencing court had found aggravating factors
7  which were specified in Arizona Revised Statutes § 13-702.  In
   <u>Viramontes</u>, the Arizona Supreme Court determined that a defendant
8  convicted of first-degree murder must be sentenced pursuant to section
   13-703 rather than section 702.

9           We believe that sections 13-702, 13-703, and
            13-1105 are clear. Section 13-1105 provides that
10          any person guilty of first degree murder must be
            sentenced pursuant to section 13-703. Section
11          13-703(A) expressly states that a person guilty
            of first degree murder shall suffer death or
12          imprisonment pursuant to its terms. And, section
            13-702 expressly applies only to class 2 through
13          class 6 felonies, with subsection (F) thereof
            stating that the statute has no effect on first
14          degree murder sentencings.
            ... Nothing in the statutes expresses or
15          implies that the procedures and aggravators of
            section 13-703 apply only to cases in which the
16          state has sought the death penalty. Rather, it is
            clearly the nature and classification of the
17          crime that determines the appropriate sentencing
            statute.
18  <u>Arizona v. Viramontes</u>, 204 Ariz. 360, 361-62, 64 P.3d 188, 189-90
    (2003).  The Arizona legislature changed the statutory sentencing
19  scheme after <u>Viramontes</u>.

20          In May 2003, about five months after the supreme
            court decided <u>Viramontes</u> and presumably in
21          response to that case, the legislature amended §
            13-703.01, adding subsection (Q), which states:
22          If the death penalty was not alleged or was
            alleged but not imposed, the court shall
23          determine whether to impose a sentence of life or
            natural life.  In determining whether to impose
24          a sentence of life or natural life, the court:
            1. May consider any evidence introduced
25          before sentencing or at any other sentencing
            proceeding.
26          2. Shall consider the aggravating and
            mitigating circumstances listed in § 13-702 and
27          any statement made by a victim.
    <u>Arizona v. Fell</u>, 209 Ariz. 77, 80-81, 97 P.3d 902, 905-06 (Ct. App.
    2004).

28                              -7-

However, the state court denied Petitioner's claims regarding his counsel's alleged ineffectiveness and his claim of newly discovered evidence, determining Petitioner had failed to establish a colorable claim for relief on those bases.

Petitioner was, accordingly, re-sentenced on December 2, 2005. Id., Exh. AA. Petitioner was represented by counsel at the sentencing hearing, and a different judge presided over the sentencing hearing than the initial trial and sentencing judge. At the sentencing hearing the judge noted that, after Petitioner's initial sentencing, he "went through a restoration competency," i.e., he was evaluated and treated by mental health experts. At the sentencing hearing Petitioner's mother, grandmother, and aunt averred that Petitioner had a troubled youth, suffered from hereditary mental illness, and began using drugs at a young age. Petitioner's counsel argued that Petitioner's mental condition at the time of the crime rendered him unable to form the requisite mens rea of first degree murder, i.e., that his "reduced capacity" was a mitigating factor. Counsel argued that Petitioner should be resentenced to a term of life imprisonment with the possibility of parole.

At the re-sentencing, the state court found as aggravating factors that the offense was committed in consideration for the receipt of anything of pecuniary value, i.e., that Petitioner and the co-defendants had determined to take the victim's belongings and Petitioner did receive the victim's drugs, and that Petitioner's actions caused extreme emotional trauma to the victim's mother. Id., Exh. AA. As

-8-

mitigating factors, the state court noted Petitioner's age, emotional and physical immaturity, and dysfunctional upbringing. Id., Exh. AA. Although the state court also noted that Petitioner was under the influence of drugs and alcohol at the time of the offense, it rejected the claim that Petitioner was incapable of appreciating the wrongfulness of his conduct. Id., Exh. AA.[9] "On balance, the Court [found] nothing significant [had] changed to cause the Court to change the sentence of that originally imposed." Id., Exh. AA. The state court again ordered Petitioner to be committed for his natural life pursuant to his conviction for murder.

Petitioner initiated a second state Rule 32 action on November 3, 2006. Id., Exh. BB. Petitioner asserted that he was resentenced to an aggravated term of imprisonment in violation of Blakely v. Washington, 542 U.S. 296 (2004), because he was ordered to serve natural life in prison on the basis of aggravating factors not admitted or found beyond a reasonable doubt by a jury. Id., Exh. CC. Petitioner argued that the Arizona Supreme Court's opinion in State v. Fell, 210 Ariz. 554, 115 P.3d 594 (2005), finding that a natural life sentence was not an aggravated term and could be imposed without a jury finding of aggravating factors, was incorrectly decided.

The state trial court dismissed Petitioner's second Rule 32 action on November 5, 2008, concluding that it was

_____

[9] "This was a very calculated, planned exercise by you and the others as detailed in the pre-sentence reports as of trial. I won't go through the chapter and verse, but it's obvious that that's what happened." Answer, Exh. AA.

required to follow the decisions of the Arizona Supreme Court, i.e., _Fell_. _Id._, Exh. FF. The state trial court reasoned that, therefore, Petitioner had failed to demonstrate that the sentencing court violated his Sixth Amendment right to a jury determination of aggravating factors under _Blakely_. In denying relief the court noted that Petitioner appeared to be challenging the effectiveness of his trial and appellate counsel. The trial court determined that, to that extent Petitioner had asserted an ineffective assistance of counsel claim, Petitioner should have raised all of his ineffective assistance of counsel claim in his prior Rule 32 proceeding and was now precluded from asserting such a claim.

Petitioner sought review of this decision by the Arizona Court of Appeals, which denied review on February 3, 2010. _Id._, Exh. JJ. Petitioner filed a petition for review in the Arizona Supreme Court, which denied review on July 7, 2010. _Id._, Exh. MM.

In his federal habeas petition, filed September 15, 2010, Petitioner advances the following grounds for relief:

(1) Petitioner alleges he was denied a jury finding of aggravating factors at his 2005 re-sentencing, in violation of the Supreme Court's decision in _Blakely v. Washington_, 542 U.S. 296 (2004).

(2) Petitioner alleges he was denied his constitutional right to have the aggravating factors proved beyond a reasonable doubt at his 2005 re-sentencing.

(3) Petitioner alleges he was illegally re-sentenced to a term greater than that authorized by the finding of guilt and absent jury findings of aggravating factors.

(4) Petitioner alleges he was denied the effective assistance of counsel at his 2005 re-sentencing because counsel failed to protect his right to a jury finding of the aggravating factors beyond a reasonable doubt.

(5) Petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to seek a determination of Petitioner's competence to be tried.

(6) Petitioner alleges he was denied his right to due process because he was convicted of felony murder when there was insufficient evidence to support the predicate felony.

(7) Petitioner alleges he was denied his right to due process because, during voir dire, the jury panel was misinformed about their role in sentencing and Petitioner was denied the full use of his peremptory challenges.

Respondents argue:

> While Grounds I, II, III, and IV of the instant Petition for Writ of Habeas Corpus are timely, Grounds V, VI, and VII are untimely and this Court should therefore deny them and dismiss them with prejudice. ... Mayle v. Felix, 545 U.S. 644, 662 (2005) ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."); see also Bachman v. Bagley, 487 F.3d 979, 983–84 (6th Cir. 2007) (finding § 2244(d)(1) must be applied on a claim-by-claim basis); Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004)

**II Analysis**

**A. Statute of limitations**

The Magistrate Judge does not agree with Respondents that some of Petitioner's claims are barred by the applicable statute of limitations found in the Antiterrorism and Effective Death Penalty Act ("AEDPA").

The AEDPA imposed a one-year statute of limitations on state prisoners seeking federal habeas relief from their state convictions. <u>See</u>, <u>e.g.</u>, <u>Espinoza Matthews v. California</u>, 432 F.3d 1021, 1025 (9th Cir. 2005); <u>Lott v. Mueller</u>, 304 F.3d 918, 920 (9th Cir. 2002). "The 'limitation period shall run from ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" <u>Roberts v. Marshall</u>, 627 F.3d 768, 771 (9th Cir. 2010), <u>quoting</u> 28 U.S.C. § 2244(d)(1)(A).

The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2). A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004).

In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed, even though the petition is not filed until later. See, e.g., Isley v. Arizona Department of Corr., 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003).

The statute of limitations under AEDPA is subject to equitable tolling in appropriate cases. Holland v. Florida, [] 130 S. Ct. 2549, 2560 (2010). However, for equitable tolling to apply, a petitioner must show

-13-

> "'(1) that he has been pursuing his rights
> diligently and (2) that some extraordinary
> circumstances stood in his way'" and
> prevented him from filing a timely petition.
> <u>Id.</u> at 2562 (quoting <u>Pace</u>, 544 U.S. at 418).

<u>Celaya v. Stewart</u>, 691 F. Supp. 2d 1046, 1055 (D. Ariz. 2010).

At the time that Petitioner's convictions and sentences became final at the conclusion of his direct appeal proceedings, i.e., when the time expired for Petitioner to seek a writ of certiorari from the Arizona Supreme Court's denial of relief in his direct appeal, Petitioner had filed a timely action for state post-conviction relief which tolled the statute of limitations on Petitioner's federal habeas action until the resolution of the state action for post-conviction relief. The end result of Petitioner's first action for state post-conviction relief was his resentencing on December 2, 2005. Accordingly, the statute of limitations with regard to Petitioner's federal habeas action was tolled until Petitioner's resentencing.

Therefore, assuming the one-year statute of limitations on Petitioner's federal habeas action began to run on the day after he was resentenced, i.e., December 3, 2005, the statute of limitations ran for approximately eleven months, until it was tolled by the filing of a state action for post-conviction relief on November 3, 2006. The statute of limitations was tolled until September 10, 2010, when the Arizona Supreme Court denied review of the trial court's and Arizona Court of Appeals' decisions denying post-conviction relief. When Petitioner filed his habeas petition on September 15, 2010, a total of eleven

-14-

months and five days of untolled time had passed since Petitioner's convictions and sentences became final.

## B. Exhaustion and procedural default

The District Court may only grant federal habeas relief on the merits of a claim which has been exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).[10]

The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007) (providing a thorough discussion of what

---

[10] Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for federal habeas relief. However, section 2254 now states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (1994 & Supp. 2010).

-15-

constitutes the "highest court" in Arizona for purposes of exhausting a habeas claim in the context of a conviction resulting in a non-capital sentence).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). See also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003). In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors. See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.

In order to fulfill exhaustion requirements, a petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court. Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513-14 (1971); Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009). Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. See Scott v.

-16-

<u>Schriro</u>, 567 F.3d 573, 582 (9th Cir.), <u>cert.</u> <u>denied</u>, 130 S. Ct. 1014 (2009); <u>Lopez v. Schriro</u>, 491 F.3d 1029, 1040 (9th Cir. 2007).  Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, <u>Picard</u>, 404 U.S. at 277-78, 92 S. Ct. at 512-13, they must do more than present the facts necessary to support the federal claim.  See <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts.  28 U.S.C. § 2254(c) (1994 & Supp. 2010).  Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts.  See <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 2387 (2006).  If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.  See, <u>e.g.</u>, <u>id.</u>, 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  See <u>Castille</u>, 489 U.S. at 351-52, 109 S. Ct. at 1060.  Procedural default also occurs when a petitioner did present a claim to the

state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); Coleman, 501 U.S. at 727-28, 111 S. Ct. at 2553-57; Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not previously fairly presented to the Arizona Court of Appeals in his direct appeal. See Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998).

-18-

### C. Cause and prejudice

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation. See Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991). Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the <u>defense</u> impeded his compliance with Arizona's procedural rules. See Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005); Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez-Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996). To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982). See also Correll v. Stewart, 137 F.3d 1404, 1415-16 (9th Cir. 1998).

Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default. See Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986). Additionally, allegedly ineffective assistance of appellate counsel does not establish cause for the failure to properly exhaust a habeas claim in the state courts unless the specific Sixth Amendment claim providing the basis for cause was itself

properly exhausted.  <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); <u>Coleman</u>, 501 U.S. at 755, 111 S. Ct. at 2567 ("We reiterate that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation"); <u>Deitz v. Money</u>, 391 F.3d 804, 809 (6th Cir. 2004) ("[a]ttorney error does not constitute cause to excuse a procedural default unless counsel's performance was constitutionally deficient.").

To establish prejudice, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his entire trial with constitutional violations.  <u>See</u> <u>Vickers</u>, 144 F.3d at 617; <u>Correll</u>, 137 F.3d at 1415-16.  Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes.  <u>See</u> <u>Manning v. Foster</u>, 224 F.3d 1129, 1135-36 (9th Cir. 2000); <u>Ivy v. Caspari</u>, 173 F.3d 1136, 1141 (8th Cir. 1999).  Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.  <u>See</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); <u>Thomas</u>, 945 F.2d at 1123 n.10.

### D. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental

miscarriage of justice. <u>See</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 393,
124 S. Ct. 1847, 1852 (2004); <u>Schlup v. Delo</u>, 513 U.S. 298, 316,
115 S. Ct. 851, 861 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478,
485-86, 106 S. Ct. 2639, 2649 (1986). A fundamental miscarriage
of justice occurs only when a constitutional violation has
probably resulted in the conviction of one who is factually
innocent. <u>See</u> <u>Murray</u>, 477 U.S. at 485-86, 106 S. Ct. at 2649;
<u>Thomas v. Goldsmith</u>, 979 F.2d 746, 749 (9th Cir. 1992) (showing
of factual innocence is necessary to trigger manifest injustice
relief). To satisfy the "fundamental miscarriage of justice"
standard, a petitioner must establish by clear and convincing
evidence that no reasonable fact-finder could have found him
guilty of the offenses charged. <u>See</u> <u>Dretke</u>, 541 U.S. at 393,
124 S. Ct. at 1852; <u>Wildman v. Johnson</u>, 261 F.3d 832, 842-43
(9th Cir. 2001).

### E. Adequate and independent state-law basis

To constitute an adequate and independent state
procedural ground sufficient to support a state court's finding
of procedural default, "a state rule must be clear, consistently
applied, and well-established at the time of [the] petitioner's
purported default." <u>Lambright v. Stewart</u>, 241 F.3d 1201, 1203
(9th Cir. 2001). A state rule is considered consistently
applied and well-established if the state courts follow it in
the "vast majority of cases." <u>Scott</u>, 567 F.3d at 580, <u>quoting</u>
<u>Dugger v. Adams</u>, 489 U.S. 401, 417 n.6, 109 S. Ct. 1211, 1221
n.6 (1989). The Ninth Circuit Court of Appeals has held that
"federal courts should not insist upon a petitioner, as a

procedural prerequisite to obtaining federal relief, comply[]
with a rule the state itself does not consistently enforce."
Id., 567 F.3d at 581-82, quoting Siripongs v. Calderon, 35 F.3d
1308, 1318 (9th Cir. 1994). It is Respondents' burden to prove
the rule cited and relied upon by the state court in denying
relief was clear, consistently applied, and well-established at
the time the rule was applied to Petitioner's case. Id.

Additionally, for the proffered state procedural bar to
preclude the consideration of a habeas claim "the state court
must actually have relied on the procedural bar as an
*independent basis* for its disposition of the case." Caldwell v.
Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638-39 (1985)
(emphasis added). See also Harris v. Reed, 489 U.S. 255,
261-62, 109 S. Ct. 1038, 1042 (1989).

> "[A] procedural default does not bar
> consideration of a federal claim on either
> direct or habeas review unless the last state
> court rendering a judgment in the case
> clearly and expressly states that its
> judgment rests on a state procedural bar."
> Harris, 489 U.S. at 263, 109 S. Ct. 1038 [].
> ... Sanders v. Cotton, 398 F.3d 572, 580 (7th
> Cir. 2005) (where the state appellate court's
> discussion of waiver is intertwined with its
> merits analysis, the state court's decision
> does not rest on an independent and adequate
> state law ground)....

Pole v. Randolph, 570 F.3d 922, 937 (7th Cir. 2009) (some
internal citations and quotations omitted). See also Scott, 567
F.3d at 581-82.

**F. Standard of review regarding exhausted claims**

The Court may not grant a writ of habeas corpus to a
state prisoner on a claim adjudicated on the merits in state

-22-

court proceedings unless the state court reached a decision contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. See 28 U.S.C. § 2254(d) (1994 & Supp. 2010); Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009). Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. See Miller-El v. Dretke, 545 U.S. 231, 240-41, 125 S. Ct. 2317, 2325 (2005); Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007); Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. See Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519 (2000).

A state court decision is contrary to clearly established federal law if it arrives at a conclusion of law opposite to that of the Supreme Court or reaches a result different from the Supreme Court on materially indistinguishable facts. <u>Taylor v. Lewis</u>, 460 F.3d 1093, 1097 n.4 (9th Cir. 2006). A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. <u>Id.</u> An unreasonable application of federal law is different from an incorrect application of federal law. <u>Id.</u>

<u>McNeal v. Adams</u>, 623 F.3d 1283, 1287-88 (9th Cir. 2010), <u>cert. denied</u>, 2011 WL 1527339 (June 27, 2011) (No. 10-10109).

For example, a state court's decision is considered contrary to federal law if the state court erroneously applied the wrong standard of review or an incorrect test to a claim. <u>See</u> <u>Knowles v. Mirzayance</u>, 129 S. Ct. 1411, 1419 (2009); <u>Wright v. Van Patten</u>, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746-47 (2008); <u>Norris v. Morgan</u>, 622 F.3d 1276, 1288 (9th Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 1557 (2011). <u>See also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 737 (9th Cir. 2008); <u>Bledsoe v. Bruce</u>, 569 F.3d 1223, 1233 (10th Cir. 2009).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." <u>Ramdass v. Angelone</u>, 530 U.S. 156, 166, 120 S. Ct.

-24-

2113, 2120 (2000).  See also Norris, 622 F.3d at  1289; Cheney
v. Washington, 614 F.3d 987, 994 (9th Cir. 2010); Cook v.
Schriro, 538 F.3d 1000, 1015 (9th Cir. 2008), cert. denied, 129
S. Ct. 1033 (2009).  However, the state court's decision is an
unreasonable application of clearly established federal law only
if it can be considered objectively unreasonable.  Renico v.
Lett, 130 S. Ct. 1855, 1862 (2010); Williams, 529 U.S. at 409,
120 S. Ct. at 1521; Carey, 549 U.S. at 74-75, 127 S. Ct. at 653.
An unreasonable application of law is different from an
incorrect one.  See Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct.
1843, 1850 (2002); Cooks v. Newland, 395 F.3d 1077, 1080 (9th
Cir. 2005).[11]

        If the Court determines that the state court's decision
was an objectively unreasonable application of clearly
established United States Supreme Court precedent, the Court
must review whether Petitioner's constitutional rights were
violated, i.e., the state's ultimate denial of relief, without
the deference to the state court's decision that the Anti-
Terrorism and Effective Death Penalty Act ("AEDPA") otherwise
requires.  See Panetti v. Quarterman, 551 U.S. 930, 953-54, 127
S. Ct. 2842, 2858-59 (2007); Norris, 622 F.3d at 1286.

---

[11] "That test is an objective one and does not permit a court
to grant relief simply because the state court might have incorrectly
applied federal law to the facts of a certain case."  Adamson v.
Cathel, 633 F.3d 248, 255-56 (3d Cir. 2011).

-25-

**G. Petitioner's claims for relief**

**1. Petitioner alleges he was denied a jury finding of aggravating factors at his 2005 re-sentencing, in violation of the Supreme Court's decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).**

The claim is timely and was exhausted in the state courts. <u>See</u> Answer, Exh. BB & FF. The Arizona state courts determined that Petitioner's re-sentencing did not violate the doctrine set forth by the United States Supreme Court in <u>Blakely v. Washington</u>, i.e., that Petitioner's sentence did not violate his Sixth Amendment right to have a jury determine his guilt. This decision was neither contrary to, nor an unreasonable application of federal law.

The <u>Blakely</u> opinion arose from a previous decision of the United States Supreme Court in <u>Apprendi v. New Jersey</u>. <u>See</u> 530 U.S. 466, 120 S. Ct. 2348 (2000). The Supreme Court held in <u>Apprendi</u> that, other than the fact of a prior conviction, any fact which increases the penalty for a crime beyond the legislatively-prescribed "statutory maximum" must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 488-90, 120 S. Ct. at 2361-63. The Supreme Court concluded that, otherwise, a defendant's Sixth Amendment right to have a jury determine their guilt was violated. The federal courts interpreted <u>Apprendi</u> to mean that a sentencing judge may not aggravate a sentence beyond the "statutory maximum" proscribed by the state legislature.

In <u>Blakely</u>, the United States Supreme Court clarified that the term "statutory maximum," as used in <u>Apprendi</u>, was to

be interpreted as the presumptive sentence, or the presumptive sentence given the facts as found by the jury or admitted by the defendant, rather than the maximum statutory sentence allowed after judicial fact-finding. See 542 U.S. at 303-04, 124 S. Ct. at 2537; Allen v. Reed, 427 F.3d 767, 772 (10th Cir. 2005) ("In other words, [after Blakely,] the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.").

A defendant convicted of first-degree murder in the State of Arizona may be sentenced to a term of natural life or a term of 25 years to life imprisonment, i.e., a sentence of life imprisonment but with the possibility of parole after serving 25 years. The Arizona courts have determined that a sentencing court may impose a sentence of natural life for first-degree murder based solely on the facts reflected in the jury's guilty verdict, i.e., the elements of that crime. E.g., Arizona v. Fell, 210 Ariz. 554, 558-60, 115 P.3d 594, 598-600 (2005)(en banc). The Arizona courts have reasoned that, because there is no requirement that any aggravating factor be found before natural life may be imposed, a trial court does not unreasonably apply clearly established federal law, i.e., Blakely, in sentencing a defendant convicted of first-degree murder to natural life without a jury determination of aggravating factors beyond a reasonable doubt. See id., 210 Ariz. at 560, 115 P.3d at 600 ("We therefore conclude that the Sixth Amendment does not require that a jury find an aggravating

circumstance before a natural life sentence can be imposed");
<u>Arizona v. Williams</u>, 220 Ariz. 331, 333, 206 P.3d 780, 782 (Ct. App. 2008) ("Our supreme court ruled in <u>Fell</u> that neither before nor after the legislature amended the statutes in 2003 was a trial court required to make any specific finding before imposing a natural life sentence."). <u>See also</u> <u>Arizona v. Fell</u>, 209 Ariz. 77, 86, 97 P.3d 902, 910-11 (Ct. App. 2004).[12]

In <u>Fell</u>, the en banc Arizona Supreme Court held that Arizona's non-capital murder sentencing scheme does not offend <u>Apprendi</u> or <u>Blakely</u> because "nothing in § 13-703 require[s] the finding of any fact beyond those reflected in the jury's verdict of guilt as a prerequisite to the imposition of a natural life sentence." 210 Ariz. at 558-59, 115 P.3d at 598-99. The court rejected the argument that a sentence of life with the possibility of parole is the "presumptive" sentence and, accordingly, that a sentence of natural life constitutes an

---

[12]
> Neither the statute nor case law requires a sentencing judge to enter factual findings on the aggravating or mitigating factors in this context. <u>Compare</u> § 13-703 (containing no language requiring findings of fact on circumstances judge considers in imposing prison term of natural life or life with the possibility of parole) with § 13-702(B) (requiring factual findings on aggravating or mitigating factors); [ ] And, we find both unsupported and unpersuasive [the defendant's] suggestion that a life term of imprisonment with the possibility of parole is the "presumptive" prison term in this context or the "statutory maximum" for purposes of Blakely and that a natural life term is tantamount to an aggravated, upward adjustment from that presumptive term.

209 Ariz. 77, 86, 97 P.3d 902, 910-11 (Ct. App. 2004).

-28-

"aggravated" sentence for first-degree murder. <u>Id.</u> "Had the legislature intended to require a specific finding be made before a natural life sentence could be imposed, it surely would have said so specifically, as it did in the statutes governing sentencing for felonies other than first-degree murder." <u>Id.</u>, 210 Ariz. at 559, 115 P.3d at 599.

The Arizona courts have interpreted the law applicable at the time of Petitioner's sentencing as allowing an individual convicted of first-degree murder to be sentenced to natural life "based solely on the jury's guilty verdict, without additional findings." <u>Fell</u>, 209 Ariz. at 85, 97 P.3d at 910. This interpretation of state law is binding on this Court. The Supreme Court "has repeatedly held that a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 126 S. Ct. 602, 604 (2005). Because, as a matter of law, the jury's verdict of guilty of first-degree felony murder, without further findings, provided a sufficient factual basis for the sentence imposed on Petitioner, he is not entitled to federal habeas relief on the merits of his <u>Blakely</u> claim.

Additionally, in <u>Arizona v. Martinez</u> the Arizona Court of Appeals denied a <u>Blakely</u> claim and affirmed a defendant's sentencing in accordance with <u>Viramontes</u>, concluding:

> In <u>Blakely</u>, the Court specifically distinguished the situation where judicial sentencing factors merely impact the minimum punishment available from that where they increase the maximum punishment above that authorized by the verdict. [ ] It is only in the latter case that a defendant's due

-29-

process right to trial by jury is implicated. <u>See</u> <u>Harris v. United States</u>, 536 U.S. 545, 567, 122 S.Ct. 2406, 153 L.Ed.2d 524[ ] (2002)[ ]. Because a guilty verdict for first-degree murder authorizes the court to impose a life sentence either with or without the possibility of release, the court may properly consider the statutory sentencing factors, without the need for jury findings regarding those factors, in deciding whether to allow the possibility of release. <u>See</u> ... <u>State v. Fell</u>, 209 Ariz. 77, 86, ¶ 29, 97 P.3d 902, 911 (App. 2004) ("<u>Blakely</u> does not apply to a trial court's decision whether to sentence a defendant convicted of first-degree murder to a term of natural life imprisonment or life with the possibility of parole.").

<u>Arizona v. Martinez</u>, 209 Ariz. 280, 283-84, 100 P.3d 30, 33-34 (Ct. App. 2004), <u>cert. denied</u>, 546 U.S. 1044, 126 S. Ct. 762 (2005).

Had the Arizona courts erred in their interpretation of <u>Blakely</u>, the United States Supreme Court could have accepted certiorari in <u>Martinez</u> to consider the issue.[13] Because <u>Blakely</u> is not applicable to Petitioner's sentence for first-degree murder, and the United States Supreme Court has indicated that Arizona's sentencing scheme does not violate the doctrine of <u>Blakely</u>, the Arizona courts did not err by concluding that Petitioner was not entitled to relief based on a claim that his sentence violated the doctrine of <u>Blakely</u>. Accordingly,

---

[13] The Magistrate Judge reached a similar conclusion in a Report and Recommendation in another section 2254 matter, <u>Williams v. Perkins</u>, available at 2007 WL 433575. The Honorable Earl H. Carroll adopted the Report and Recommendation in that matter, which decision was affirmed by the Ninth Circuit Court of Appeals, <u>see</u> 399 Fed. App. 210 (Oct. 06, 2010), and the United States Supreme Court denied certiorari in the matter on March 21, 2011. <u>See</u> 131 S. Ct. 1681 (2011).

-30-

Petitioner is not entitled to federal habeas relief on this claim.

**2. Petitioner alleges he was denied his constitutional right to have the aggravating factors proved beyond a reasonable doubt at his 2005 re-sentencing.**

As explained supra, Petitioner's sentence upon re-sentencing satisfies the United States Supreme Court's decision in both Blakely and Apprendi. Therefore, Petitioner's sentence does not violate his constitutional rights and this claim may be denied on the merits pursuant to the reasoning set forth with regard to Petitioner's first claim for relief.

**3. Petitioner alleges he was illegally re-sentenced to a term greater than that authorized by the finding of guilt and absent jury findings of aggravating factors.**

As explained supra, Petitioner's sentence upon re-sentencing satisfies the United States Supreme Court's decision in both Blakely and Apprendi with regard as to whether Petitioner's sentence was authorized by the jury's finding of guilt. Therefore, Petitioner's sentence does not violate his constitutional rights and this claim may be denied on the merits pursuant to the reasoning set forth with regard to Petitioner's first claim for relief.

**4. Petitioner alleges he was denied the effective assistance of counsel at his 2005 re-sentencing because counsel failed to protect his right to a jury finding of the aggravating factors beyond a reasonable doubt.**

Respondents argue this claim should be denied on the merits. Answer at 26 ("Because Blakely is inapplicable and no sentencing error occurred, Petitioner cannot show that his counsel at the 2005 resentencing was ineffective.").

To state a claim for ineffective assistance of counsel, a petitioner must show that his attorney's performance was deficient and that the deficiency prejudiced the petitioner's defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance. See id., 466 U.S. at 687, 104 S. Ct. at 2064. To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. See also, e.g., Harrington v. Richter, 131 S. Ct. 770, 786-88 (2011). Counsel's performance will be held constitutionally deficient only if the defendant proves that it "fell below an objective standard of reasonableness," as measured by "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S. Ct. 2052. See also Cheney v. Washington, 614 F.3d 987, 994-95 (9th Cir. 2010).

To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. See also, e.g., Cheney, 614 F.3d at 994. Therefore, to succeed on an assertion his counsel's performance was deficient because counsel failed to raise a particular argument, either in his trial proceedings or in his appeals, the petitioner must

establish the argument was likely to be successful, thereby establishing that he was prejudiced by his counsel's omission. See Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir. 2007); Weaver v. Palmateer, 455 F.3d 958, 970 (9th Cir. 2006). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Accordingly, prejudice from counsel's allegedly deficient performance is less likely when the case against the defendant is strong. See, e.g., Wong v. Belmontes, 130 S. Ct. 383, 390-91 (2009); Avila v. Galaza, 297 F.3d 911, 923-24 (9th Cir. 2002); Godwin v. Johnson, 632 F.3d 301, 311 (6th Cir. 2011). It is Petitioner's burden to establish both that his counsel's performance was deficient and that he was prejudiced thereby. See, e.g., Wong, 130 S. Ct. at 384-85.

Petitioner's counsel's performance was not unconstitutionally deficient because he "failed" to raise a non-meritorious argument, i.e., that Petitioner's sentence violated Blakely, because the professional norm does not require that counsel raise non-meritorious arguments. Additionally, because Petitioner's Blakely claim was without merit, as explained supra, counsel's "failure" to raise this claim was not prejudicial. Accordingly, Petitioner's claim of ineffective assistance of counsel, based on Petitioner's assertion that counsel failed to raise a Blakely claim, may be denied on the merits.

**5. Petitioner alleges he was denied the effective assistance of trial counsel because counsel failed to seek a determination of Petitioner's competence to be tried.**

Petitioner did not exhaust this claim in the state courts. Petitioner has not established cause for, nor prejudice arising from, the procedural default of this claims. Additionally, after thoroughly reviewing the record in this matter, there is no indication that a fundamental miscarriage of justice will occur absent the Court's consideration of the merits of this claim.

Additionally, it appears from the record in this matter that the issue of Petitioner's competency to stand trial and the fact of his age and alleged "intoxication" at the time of his crimes was thoroughly explored by Petitioner's counsel, in both pretrial proceedings and regarding sentencing and re-sentencing. Accordingly, Petitioner has not established that his counsel failed to seek a determination of Petitioner's competency to be tried as a factual matter or that any alleged "failure" was prejudicial. See Premo v. Moore, 131 S. Ct. 733, 742-43 (2011). Because strategic decisions by counsel are virtually per se not reviewable on habeas, Petitioner has not stated a claim for relief. See Harrington v. Richter, 131 S. Ct. 770, 789 (2011).

1
2          **6. Petitioner alleges he was denied his right to due process because he was convicted of felony murder when there was insufficient evidence to support the predicate felony**.

3          At Petitioner's trial, the jury was instructed both as
4   to first degree premeditated murder and felony murder.  The jury
5   was instructed that it need not form a unanimous opinion as to
6   which theory of murder had been proven.  Only one form of
7   verdict was supplied for first degree murder, which did not
8   specify under which theory of murder the jury had voted to
9   convict.  <u>See</u> Answer, Exh. I (Petitioner's brief in his direct
10  appeal).  Petitioner's trial counsel argued to the jury that
11  Petitioner was guilty, at best, of second-degree murder.

12         In his direct appeal Petitioner exhausted a claim that
13  there was insufficient evidence to support a finding that he
14  formulated the mens rea to commit robbery because his
15  accomplice's trial testimony indicated that Petitioner had
16  renounced any intent to rob the victim prior to shooting him.
17  <u>See</u> Answer, Exh. I.  Petitioner argued in his appeal that,
18  accordingly, that he could not be convicted of felony murder
19  predicated on death occurring in the course of a robbery and
20  that he was entitled to a directed verdict on this charge.
21  Petitioner did not assert in his direct appeal that this error
22  violated his federal constitutional right to due process of law.

23         Regardless of any procedural default of this claim, it
24  may be rejected on the merits.  The federal courts have
25  uniformly determined a defendant's right to due process is not
26  violated when the jury is instructed on two alternate theories
27  of murder and need not reach a unanimous decision as to which

28                                  -35-

theory of murder provided the basis for its verdict. The courts have stated that, although a unanimous verdict is required to convict a person of a crime, he is not entitled to a unanimous verdict on the precise manner in which the act was committed. <u>See</u> <u>Schad v. Arizona</u>, 501 U.S. 624, 630-31, 111 S. Ct. 2491, 2496 (1991); <u>Gibson v. Sirmons</u>, 520 F.3d 1196 (10th Cir. 2008); <u>Arnett v. Ricketts</u>, 665 F. Supp. 1437, 1441 (D. Ariz. 1987).

In <u>Schad</u>, the Supreme Court addressed the constitutionality of the Arizona Supreme Court's holding that a general verdict as to first-degree murder is permissible under Arizona law, reasoning that premeditation and the commission of a felony are not independent elements of the crime, but rather are mere means of satisfying a single mens rea element. 501 U.S. at 637-38, 111 S. Ct. at 2500. The Supreme Court held that a conviction under an instruction that did not require the jury to unanimously agree upon one of the alternative theories of premeditated murder and felony murder did not constitute a denial of due process. The Court explained that it had "never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission." <u>Id.</u>, 501 U.S. at 631, 111 S. Ct. at 2496.

The trial testimony of Petitioner's accomplice indicated Petitioner raised and lowered and raised a gun aimed at the back of the victim's head and then shot the victim, and then instructed another accomplice to shoot the victim again. This is sufficient evidence to support a jury's conclusion that Petitioner committed first-degree premeditated murder.

-36-

**7. Petitioner alleges he was denied his right to due process because, during voir dire, the jury panel was misinformed about their role in sentencing and Petitioner was denied the full use of his peremptory challenges.**

Petitioner did not exhaust this claim in the state courts. In his reply to the answer to his section 2254 petition, Petitioner does not offer a reason for his failure to exhaust this claim in the state courts.[14] Because the claim was procedurally defaulted in the state courts Petitioner must establish cause and prejudice for his procedural default, or that a fundamental miscarriage of justice will occur, before the Court may grant relief on the merits of the claim. Petitioner has not established cause and prejudice regarding the procedural default of this claim. Because sufficient evidence was presented at trial from which a reasonable jury could conclude that Petitioner was guilty, Petitioner has not established that a fundamental miscarriage of justice will occur absent consideration of this claim for relief.

### III Conclusion

The petition was timely filed. Petitioner is not entitled to habeas relief on the claim that his re-sentencing violated his federal constitutional rights or the United States Supreme Court's decision in <u>Blakely</u>. Petitioner has not established that he was denied his right to the effective

---

[14] The reply argues that Petitioner is entitled to equitable tolling of the statute of limitations with regard to any claim found not timely, based on Petitioner's mental condition after his conviction and sentencing. The reply also reargues Petitioner's claim that <u>Fell</u> was incorrectly decided.

assistance of counsel. Petitioner is not entitled to federal
habeas relief on the claim that he was improperly convicted of
first-degree murder because there was inadequate evidence to
support a predicate felony and, accordingly, a conviction based
on felony murder.

**IT IS THEREFORE RECOMMENDED** that Mr. Najar's Petition
for Writ of Habeas Corpus be **denied and dismissed with
prejudice**.

This recommendation is not an order that is immediately
appealable to the Ninth Circuit Court of Appeals. Any notice of
appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate
Procedure, should not be filed until entry of the district
court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil
Procedure, the parties shall have fourteen (14) days from the
date of service of a copy of this recommendation within which to
file specific written objections with the Court. Thereafter,
the parties have fourteen (14) days within which to file a
response to the objections. Pursuant to Rule 7.2, Local Rules
of Civil Procedure for the United States District Court for the
District of Arizona, objections to the Report and Recommendation
may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or
legal determinations of the Magistrate Judge will be considered
a waiver of a party's right to de novo appellate consideration

of the issues.  <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 18th day of July, 2011.


_____
Mark E. Aspey
United States Magistrate Judge