**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Franklin Najar, | No. CV 10-01981-PHX-SRB (MEA) |
| Petitioner, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

Petitioner, at the time proceeding pro se, has filed a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. (Doc. 1, Petition for Writ of Habeas Corpus ("Pet.").) Respondents filed an Answer and Petitioner, represented by counsel, filed a Reply. (Doc, 15, Resp'ts' Answer; Doc. 20, Pet'r's Reply.) The matter was referred to Magistrate Judge Mark E. Aspey who issued a Report and Recommendation on July 19, 2011 recommending that the Petition be denied and dismissed with prejudice. (Doc. 21, Report and Recommendation ("Rep. & Rec.").)

When it appeared that Petitioner had not timely filed an objection, the Court adopted the Report and Recommendation and denied the Petition. After further motions and the dismissal of an appeal concerning the matter, the Court vacated the Order denying the Petition and the Judgment. (Doc. 37, June 27, 2012 Order.) The Court now considers Petitioner's Objection to the Magistrate Judge's Report and Recommendation. (Doc. 29, Petitioner's Objection to Magistrate's Report and Recommendation ("Obj.").)

# I.      BACKGROUND

In October 2001, Petitioner, tried with a co-defendant, was convicted in Maricopa County Superior Court of first-degree felony murder and theft, a lesser included offense of an armed robbery charge. (Doc. 15, Ex. E, Oct. 15, 2001 Jury Trial Mins.)[1] The charges stemmed from acts committed in June 1998. (Ex. A, Indictment.) Following Petitioner's conviction, the State withdrew its intention to seek the death penalty. (Ex. F, State's Notice of Withdrawal.) On December 20, 2001, the trial court sentenced Petitioner to natural life without the possibility of parole on the first-degree murder conviction and to a one-year concurrent prison term on the theft conviction. (Ex. G, Sentencing Transcript ("Sent. Tr. I") at 39-43.) Petitioner's conviction and sentence were affirmed by the Arizona Court of Appeals (Ex. K, *State v. William Franklin Najar*, No. 1 CA-CR 02-0006 (Ariz. Ct. App. Nov. 14, 2002) (Mem. Decision).) The Arizona Supreme Court denied discretionary review. (Ex. O, *State v. William Franklin Najar*, No. CR-02-0411-PR (Ariz. Feb. 12, 2003).)

Petitioner filed state post-conviction proceedings and on July 19, 2004, the state trial court determined Petitioner should be resentenced on the first-degree murder conviction based on *State v. Viramontes*, 64 P.3d 188 (Ariz. 2003). (Ex. X, *State v. William Franklin Najar*, No. CR 1998-093180, Maricopa County Superior Court, July 21, 2004 Min. Entry.) The trial court scheduled Petitioner for a September 3, 2004 resentencing hearing but found him unable to understand the nature of the proceedings and/or to assist counsel in his defense and therefore incompetent. (*Id*. & Ex Y, Mar. 9, 2005 Order.) Petitioner was found to be restored to competency on or about September 16, 2005. (Ex. Z, Sept. 26, 2005 Order & Ex. AA, Sentencing Transcript ("Sent. Tr. II") at 4-7, 25-27.) On December 2, 2005, Petitioner was resentenced to natural life by a judge different than at his initial sentencing. (Ex. AA, Sent. Tr. II at 34-36.) After completing state post-conviction proceedings following

---

[1]Documents from the state court record have been filed with Respondents' Answer as Exhibits A through MM. (Doc. 15, Resp'ts' Answer, Exs.)

resentencing (Ex. BB-MM), Petitioner filed the present habeas petition asserting several grounds for relief.

## II.   LEGAL STANDARDS AND ANALYSIS

### A.   Standard of Review

The district court reviews de novo the portions of the Magistrate Judge's Report and Recommendation to which there is a filed objection. 28 U.S.C. § 636(b)(1)(C) ("a judge of the court shall make a de novo determination of those portions of the report, ..., to which objection is made."). *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). The district court is not required to review any issue that is not the subject of an objection. *Schmidt v. Johnstone*, 263 F. Supp. 2d 1219 (D. Ariz. 2003), citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985).  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

### B.   Petitioner's Objection

#### 1.   *Blakely* Grounds

In Grounds One through Three asserted in his federal habeas petition, Petitioner contends he was denied a jury-finding of aggravating factors beyond a reasonable doubt at his 2005 resentencing in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and his constitutional rights. (Pet. at 7-9.) In Ground Four, Petitioner asserts that counsel was ineffective at resentencing for failing to protect his right to a jury's finding of aggravating factors beyond a reasonable doubt. (*Id*. at 10.) The Magistrate Judge has recommended that each of these grounds are cognizable for review on the merits and that relief should be denied. (Rep. & Rec. at 26-33.)

Petitioner objects that what constitutes the statutory maximum sentence for purposes of federal constitutional constraints is determined only in part by state law and that the Magistrate Judge erred by finding *Blakely* inapplicable. (Obj. at 2-4.) Petitioner further contends that upon his demonstration of error, the merits of his other *Blakely*-related claims should be considered. (*Id*. at 4-5.)

1      By way of background as related to this claim, in *Apprendi v. New Jersey*, 530 U.S.

2  466 (2000), the defendant was convicted of an offense that carried a five to ten-year

3  maximum sentence but was sentenced to 12 years. *Id*. at 468-71. The sentencing court

4  applied a separate hate crime statute, based on a preponderance of the evidence, that provided

5  for an "extended term" of ten to twenty years. In ruling that the sentence imposed violated

6  the Sixth and Fourteenth Amendments, the Supreme Court held that, "Other than the fact of

7  a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

8  statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*.

9  at 490.

10     In *Blakely*, the defendant was convicted of an offense that carried a ten-year statutory

11  maximum but under state law he could not receive a sentence above a certain lower "standard

12  range" unless the judge found "substantial and compelling reasons justifying an exceptional

13  sentence" based on factors other than those used in computing the "standard range" sentence.

14  *Blakely*, 542 U.S. at 299-300. A sentence above the "standard range"could not be imposed

15  if no facts beyond those reflected in the jury's verdict or the defendant's guilty plea were

16  found by the trial judge. *Id*. at 303-04. The defendant in *Blakely* was sentenced to a term

17  more than three years above the "standard range" based on the trial judge's finding that he

18  had acted with deliberate cruelty, a finding not based on facts either admitted by the

19  defendant or found by the jury. *Id*. at 300, 303. In holding that the sentence was invalid in

20  violation of the Sixth Amendment, the Supreme Court found that "the relevant 'statutory

21  maximum' is not the maximum sentence a judge may impose after finding additional facts,

22  but the maximum he may impose without any additional findings." *Id*. at 303-04, 305.

23     Similarly, as considered in *Cunningham v. California*, 549 U.S. 270 (2007),

24  California's determinate sentencing law provided for precise lower, middle and upper prison

25  terms regarding the defendant's offense of conviction. *Id*. at 277.The trial court was

26  statutorily required to sentence the defendant to the middle term unless it found facts in

27  aggravation related to the offense or offender beyond the elements of the charged offense.

28  *Id*. at 277-79. The judge sentenced the defendant to the upper term based on aggravating

factors that outweighed the sole mitigating factor. *Id*. at 275-76. The Supreme Court held that the middle term was the relevant statutory maximum under *Blakely* and the sentence violated Sixth Amendment precedent because the judge, not the jury, was authorized to find facts permitting the upper term sentence. *Id*. at 288, 293. "If the jury's verdict alone does not authorize the sentence, if, instead, the judge must find an additional fact to impose the longer term, the Sixth Amendment requirement is not satisfied." *Id*. at 290 (citing *Blakely*, 542 U.S. at 305 and n.8).

During Petitioner's resentencing, the state trial court commented it was not required to make findings in imposing a natural life sentence but stated it would make findings based on Arizona Revised Statutes ("A.R.S.") § 13-703. (Ex AA, Sent. Tr. II at 32).[2] In resentencing Petitioner to natural life on the first degree murder conviction, the court found as aggravating factors that the offense had been committed in consideration for the receipt or expectation of anything of pecuniary value pursuant to A.R.S. § 13-703(F)(5), and Petitioner's actions caused extreme emotional trauma to the victim's mother. (*Id*. at 34-35.) The court found in mitigation Petitioner's age of 16, his emotional and physical immaturity, his dysfunctional upbringing, and that he was under the influence of drugs or alcohol. (*Id*. at 35-36.) During Petitioner's post-conviction proceedings after resentencing, the state trial court ruled that it was bound by *State v. Fell*, 115 P.3d 594 (Ariz. 2005), and Petitioner's natural life sentence had not been imposed in violation of *Blakely*. (Ex. FF, Nov. 5, 2008 Min. Entry.) The Arizona appellate courts denied review of the issue without discussion. (*Id*., Ex. GG, JJ, KK & MM.)

At the time of Petitioner's offense conduct in 1998, § 13-703(A) provided in relevant part as follows:

---

[2]Petitioner was resentenced as a result of *State v. Viramontes*, 64 P.3d 188 (Ariz. 2003), which held that in sentencing for first-degree murder under A.R.S.§ 13-703 where the state has not sought the death penalty, the statutory aggravating factors contained in A.R.S. § 13-702 should not be considered. *Id*., 64 P.3d at 190. (*See* Ex. X, Min. Entry.)  The initial sentencing court impermissibly found aggravating factors under § 13-702. (Ex. AA, Sent. Tr. II at 4.)

A person guilty of first degree murder as defined in § 13-1105 shall suffer death or imprisonment in the custody of the state department of corrections for life as determined and in accordance with the procedures provided in subsection B through G of this section. If the court imposes a life sentence, the court may order that the defendant not be released on any basis for the remainder of the defendant's natural life. An order sentencing the defendant to natural life is not subject to commutation or parole, work furlough or work release. If the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until the completion of the service of twenty-five calendar years if the victim was fifteen or more years of age and thirty-five years if the victim was under fifteen years of age.

Section 13-703(D) provided that "[t]he court shall return a special verdict setting forth its findings as to the existence or nonexistence of each of the circumstances" set forth in subsections F and G.

In *State v. Fell*, the Arizona Supreme Court considered the application of *Apprendi* and *Blakely* to a first-degree murder conviction in which the defendant had been sentenced to natural life under § 13-703. *Fell*, 115 P.3d at 596-98.[3] The State Supreme Court held that "nothing in § 13-703 required that any specific fact be found before a natural life sentence could be imposed." *Id*. at 598. It rejected the argument that life was the "presumptive" sentence for first degree murder and natural life was an "aggravated" sentence, holding that § 13-703(E) provided the court with discretion to sentence a defendant within the range of life to natural life for non-capital first degree murder. *Id*. Section 703(D)'s requirement of a special verdict was construed as explaining "the judge's reasons for imposing the sentence" but it "[did] not require any specific factual finding before a defendant is statutorily eligible for a natural life term." *Id*. at 599. The special verdict ensured that inappropriate factors were not considered in the trial court's exercise of its sentencing discretion. *Id*. The Sixth Amendment was held as not requiring a jury to find an aggravating circumstance before imposition of a natural life sentence and, regarding the defendant whose crime occurred in

---

[3]The 2000 version of § 13-703 at issue in *Fell* is the same version set forth in this Order. *See Fell,* 115 P.3d at 596, n.2.

- 6 -

1    2000, the trial judge was limited to the aggravating factors listed in § 13-703(F) in effect at

2    the time of the offense. *Id*. at 600-01.[4]

3    In reaching the recommended conclusion denying Petitioner's *Blakely* grounds, the

4    Magistrate Judge found that the Arizona courts' determination that Petitioner's resentencing

5    did not violate the Sixth Amendment doctrine set forth in *Blakely* was not contrary to, or an

6    unreasonable application of federal law. (Rep. & Rec. at 26-29, 30.) The Magistrate Judge

7    discussed several cases, including *Apprendi*, *Blakely*, and *Fell*, commenting in part that

8    *Blakely* did not apply to Petitioner's sentence. (*Id*. at 30.) Contrary to Petitioner's argument

9    in his Objection, the Magistrate Judge did not "dispense[] with the federal constitutional

10   issues raised by Petitioner by declaring that the federal courts have no role to play" in

11   interpreting the Arizona statute. (Obj. at 4.)

12   A federal court "shall not" grant habeas relief with respect to "any claim that was

13   adjudicated on the merits in State court proceedings" unless the State court decision was (1)

14   contrary to, or an unreasonable application of, clearly established federal law as determined

15   by the United States Supreme Court; or (2) based on an unreasonable determination of the

16   facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d);

17   *see Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Harrington v. Richter*, 131 S.Ct. 770,

18   785-86 (2011). For purposes of considering Petitioner's Objection, the relevant inquiry is

19   whether the state court's decision is "contrary to" clearly established precedent, that is, (1)

20

21   [4]Section 13-703 was amended in 2003 to provide that the court "'[s]hall consider the
22   aggravating and mitigating circumstances listed in section 13-702' when choosing between
     a life or natural life sentence for first degree murder." *Fell*, 115 P.3d at 596 (citing 2003 Ariz.
23   Sess. Laws, ch. 255, § 2 (codified as A.R.S. § 13-703.01(Q) (Supp. 2003)). Section §13-
     703.01(Q)(2), enacted in 2003, was held to not apply retroactively. *Fell,* 115 P.3d at 600-01.
24   In 2008, § 13-703 was renumbered as § 13-751 and §13-703.02(Q) was renumbered as § 13-
25   752. Ariz. Sess. Laws ch. 301, § 26.
     Section 13-703(D)'s requirement of a special verdict was deleted in 2002. *See State*
26   *v. Williams*, 206 P.3d 780, 782, 784 (Ariz. Ct. App. 2008) (citing 2002 Ariz. Sess. Laws 5th
     Spec. Sess., ch. 1, § 1). *Williams* held that the legislative removal of the special verdict
27   requirement was a procedural, not a substantive, change in the law and was properly applied
28   to the defendant's 2008 resentencing. *Id*. at 784-86.

1  "the state court applie[d] a rule that contradicts the governing law set forth in [Supreme

2  Court] cases," or (2) "the state court confront[ed] a set of facts that are materially

3  indistinguishable from a decision of [the Supreme Court] and nevertheless arrive[d] at a

4  result different from [its] precedent." *Williams*, 529 U.S. at 405-06.

5      Unlike the sentencing provisions considered in *Apprendi*, *Blakely* and *Cunningham*,

6  § 13-703 in effect at the time of Petitioner's offense conduct provided that the trial court

7  remained free to exercise its discretion to select a specific sentence within a range of

8  punishment of life to natural life regarding a first degree murder conviction. The trial judge

9  could consider certain listed factors in the court's discretion in imposing sentence but the

10  court alone made the appropriate factual findings. Petitioner has not demonstrated that any

11  state court decision interpreting or construing § 13-703, or any state court's application of

12  § 13-703 to his resentencing, is contrary to, or an unreasonable application of, clearly

13  established federal law as determined by the Supreme Court. *See Lockyer v. Andrade*, 538

14  U.S. 63, 75 (2003) (the "unreasonable application" clause requires the state court's

15  application of Supreme Court law to be more than incorrect or erroneous; it must be

16  objectively unreasonable). Absent a showing of fundamental unfairness, habeas relief is

17  unavailable for an alleged error in the interpretation or application of state sentencing laws.

18  *See Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). "[I]t is not the province of a federal

19  habeas court to reexamine state-court determinations on state-law questions." *Estelle v.*

20  *McGuire*, 502 U.S. 62, 67-68 (1991).

21      The Court agrees with the Magistrate Judge's recommendation that Petitioner's

22  Grounds One through Three should be denied. The Court further agrees with the

23  recommendation denying Petitioner's Ground Four alleging that counsel was ineffective for

24  not raising the *Blakely* issue at resentencing. (Rep. & Rec. at 31-33.) Counsel cannot be

25  ineffective for failing to raise a meritless objection. *Juan H. v. Allen*, 408 F.3d 1262, 1273-74

26  (9th Cir. 2005).

27           **2.    Ineffective Assistance of Counsel**

28

1  Petitioner asserts as Ground Five in his habeas petition that counsel was ineffective
2  for not seeking a determination of Petitioner's competency to stand trial. (Pet. at 11.) The
3  Magistrate Judge has recommended that Petitioner did not exhaust this claim in the state
4  courts. (Rep. & Rec. at 34.)  It further has been recommended that Petitioner has not shown
5  cause for this procedural default and prejudice, or a fundamental miscarriage of justice, and
6  that, upon a review of the record, Petitioner has not shown that counsel failed to seek a
7  competency determination. (*Id.*) Petitioner objects that the Magistrate Judge did not correctly
8  analyze this issue. (Obj. at 5.)

9  Petitioner contends that the Magistrate Judge did not cite any factual basis for the
10 recommended finding that the claim was not exhausted. (*Id.*) However, the Procedural
11 History section of the Report and Recommendation discusses the circumstances relevant to
12 exhaustion. (Rep. & Rec. at 1-10.)  In his initial state post-conviction proceedings following
13 appeal, Petitioner was represented by appointed counsel but chose to represent himself
14 because he disagreed with counsel on what issues should be raised. (*Id.* at 6 (referring to Ex.
15 S).) Petitioner pro per contended that his conviction should be vacated under Rule 32.1,
16 Ariz.R.Crim.P., based on several grounds, including that he had been improperly sentenced
17 for first degree murder and because he was "ineffectively represented by incompetent
18 counsel during the trial process" in violation of the Sixth Amendment. (Rep. & Rec. at 6
19 (referring to Exs. R & U (Post-Conviction ("PCR") Pets.).)[5] Regarding this latter issue,
20 Petitioner claimed counsel was inadequately prepared because counsel was focused on
21 Petitioner's refusal to accept a plea bargain. (Ex. R, PCR Pet. at 70-71.)[6] Petitioner also
22 challenged counsel's presentation of defense witness Dr. Mark Wellek's testimony that a
23 teenager may act impulsively due to incomplete brain development and that drugs inhibit
24 cognitive function. (*Id.* at 71, 74.) Petitioner  contended that counsel had recommended that

25 _____

26 [5]Petitioner pro se filed duplicate briefing in these Petitions for Post-Conviction Relief.
27 (Ex. R, Oct. 23, 2005 PCR Pet.; Ex. U, Mar. 5, 2004 PCR Pet.)

28 [6]The cited page numbering for Exhibit R is the electronic filing pagination.

1   he undergo an EEG brain scan but the test was performed incorrectly and then not
2   readministered because he could not remain "sleep deprived"as necessary to the test. (*Id*. at
3   72-75.)

4          Although the state trial court ruled during the first post-conviction proceeding that
5   Petitioner was entitled to resentencing, it denied Petitioner's ineffective assistance of counsel
6   claim. (Rep. & Rec. at 6-8 (referring to Ex. X, Min. Entry).) Petitioner did not seek further
7   review of the denial of his ineffective counsel claim during his initial post-conviction
8   proceeding.

9          Instead, as discussed in the Report and Recommendation, after being resentenced,
10  Petitioner initiated a second state post-conviction proceeding. (Rep. & Rec. at 9 (referring
11  to Ex. BB, PCR Notice).)  In this second proceeding, Petitioner in his pro per Notice of Post-
12  Conviction Relief listed, among other grounds, that he was incompetent at the time of trial
13  and could not assist defense counsel because of his mental illness, and that trial counsel was
14  ineffective in failing to pursue issues that prejudiced Petitioner in a death penalty case
15  without listing the unraised issues. (Ex. BB, PCR Notice at 3.) In his Petition for Post-
16  Conviction Relief filed in this record, Petitioner, represented by counsel, raised only *Blakely*-
17  related issues relevant to resentencing. (Rep.& Rec. at 9 (referring to Ex. CC, PCR Pet.).)
18  This counseled petition mentioned that Petitioner's Supplemental Petition for Post
19  Conviction Relief was attached as Exhibit F but no such attachment is contained in the state
20  court record submitted in this case. (Ex. CC, PCR Pet. at 1, n.1.)[7] The state trial court denied
21  relief, including that, to the extent Petitioner was asserting ineffective assistance of counsel,
22  he should have raised all such claims in his prior  Rule 32, Ariz.R.Crim.P., proceeding and
23  was now precluded such review. (Rep. & Rec. at 10 (referring to Ex. FF, Min. Entry).)

24         Petitioner, represented by counsel, sought and was denied review of the trial court's
25  ruling in the Arizona appellate courts. (Rep.& Rec. at 10 (referring to Ex. JJ & MM.).)  In

26

27         [7]The State's Response to the Petition for Review filed in the State Court of Appeals
    referred to the attachment to the counseled Petition as "'Defendant's Supplemental Petition
28  for Post Conviction Relief.'" (Ex. HH, Resp. at 4-5.)

the petitions for review filed in both courts, counsel asserted Petitioner's alleged mental incompetency in arguing that the state trial court erred in precluding review of the ineffective assistance of counsel claim. (Ex. GG, Pet. for Review filed in the Ariz. Ct. App. at 5 ¶¶ 12-13 &18-20; Ex. KK, Pet. for Review filed in the Ariz. S.Ct. at12.)

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c). Regarding a petitioner sentenced to less than the death penalty, the claims must be fairly presented to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief but he does not need to seek discretionary review in the Arizona Supreme Court. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 928-30, 933 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

As Respondents argue in their Answer, Petitioner did not seek review in the State Court of Appeals of the trial court's denial of his ineffective assistance of counsel claim raised in his first post-conviction pro per petition. Petitioner therefore did not exhaust state court remedies with respect to the claim. Because Petitioner no longer has available state court remedies, *see* Ariz.R.Crim.P. 32.1(d)-(h), 32.4(a), the claim is procedurally barred unless Petitioner can show cause and prejudice or fundamental miscarriage of justice. (Resp'ts' Answer at 21-23.)

Petitioner appears to object that his incompetence at the time of resentencing should excuse the procedural default because upon being restored to competency he raised his ineffective assistance of counsel claim in his second post-conviction proceeding. (Obj. at 5.) Petitioner makes this argument for the first time in his Objection. As the Magistrate Judge noted, Petitioner argued in his Reply that his alleged mental condition entitled him to equitable tolling of the statute of limitations. (Rep. & Rec. at 37, n.14 (*see* Pet'r's Reply.) The Magistrate Judge did not acknowledge that Petitioner had argued that his mental condition after conviction and sentencing excused the procedural error as Petitioner now contends. (*See* Obj. at 5.)

1    A state prisoner demonstrates "cause" by showing that some objective factor external

2    to the prisoner or his counsel impeded efforts to comply with the state's procedural rules. *See*

3    *Murray v. Carrier,* 477 U.S. 478, 488 (1986). Petitioner was represented by counsel during

4    his first post conviction proceeding but chose to represent himself by filing his own petition.[8]

5    "[A] pro se petitioner's mental condition cannot serve as cause for a procedural default, at

6    least when the petitioner on his own or with assistance remains 'able to apply for post-

7    conviction relief to a state court.'" *Schneider v. McDaniel*, 674 F.3d 1144, 1154 (9th Cir.),

8    *cert. denied*,133 S.Ct. 579 (2012) (quoting *Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905,

9    909 (9th Cir. 1986)). Because Petitioner remained able to apply for state post-conviction

10    relief, his alleged mental disability does not establish cause excusing the procedural default.

11    Moreover, Petitioner has not provided any evidence establishing his alleged

12    incompetence at the time of trial. During his initial sentencing hearing, defense counsel

13    proffered in mitigation an evaluation report stating that Petitioner's ability to appreciate the

14    wrongfulness of his conduct was significantly impaired due to his "'untreated manic

15    depressive(bipolar) mood disorder.'" (Ex. G, Sent. Tr. I at 24-25.) Counsel also argued

16    Petitioner's drug and alcohol use. (*Id*. at 25.) The sentencing judge, who also presided over

17    Petitioner's trial, found the report unsupported by the evidence and that a defense witness's

18    trial testimony regarding a teenager's undeveloped brain was not persuasive. (*Id*. at 26, 36-

19    38.) Petitioner made a statement to the court and answered "no, sir" when the court asked if

20    he was dissatisfied or unhappy with his attorneys' services. (*Id*. at 31-32, 35.)

21    As discussed by the Magistrate Judge, the state resentencing court observed that

22    Petitioner had gone through a "'restoration competency.'" (Rep. & Rec. at 8; *see* Ex. AA,

23    Sent. Tr. II at 6.) Defense counsel argued in mitigation that Petitioner's mental condition at

24    the time of the crimes rendered him unable to form the requisite mens rea of first degree

25    murder. (Rep.& Rec. at 8; *see* Ex. AA, Sent. Tr. II at 21-24.) Defense counsel described

26

27    [8]Petitioner's counsel asserted during the second post-conviction proceeding that
     Petitioner's pro per PCR Petition filed in the first proceeding had been "authored by an
28    inmate." (Ex. GG, Pet. for Review filed in the Ariz. Ct. App. at 18-19.)

Petitioner at age 16 as having an adolescent brain that was seriously compromised by undiagnosed mental illness, as having experienced early childhood abuse and neglect, and as self-medicating through substance use. (Ex. AA, Sent. Tr. II at 15-16, 22-24.) Counsel argued that combined with peer pressure, lack of sleep and other situations, Petitioner was led to make the impulsive decision that led to a man's death. (*Id.* at 15-16.)[9] The resentencing court rejected Petitioner's contention that he was incapable of appreciating the wrongfulness of his conduct. (*Id.* at 35.)

No claim was made at either sentencing hearing that Petitioner was incompetent to assist in his defense at the time of trial. In his counseled petitions for review filed in the appellate courts during the second post-conviction proceeding, Petitioner argued that his incompetency at the time of resentencing led to the "possibility" or "likelihood" that he was incompetent to stand trial. (Ex. GG at 18-19 and Ex. KK at 13.)

A determination that Petitioner was incompetent to proceed with resentencing for approximately one year in 2004-2005 and then restored to competency does not mean he was mentally incompetent at the time of trial in 2001. The Court finds itself in agreement with the Magistrate Judge's recommended conclusion denying Petitioner's Ground Five.

### 3.   Due Process Violation: Sufficiency of the Evidence Regarding the Predicate Felony as to Petitioner's Felony Murder Conviction

Petitioner agrees that the Magistrate Judge correctly analyzed whether he was denied due process of law regarding the sufficiency of the evidence that supported his conviction for felony murder. (Obj. at 6.). Petitioner has not stated an objection to the Magistrate Judge's recommendation rejecting Ground Six of his habeas petition. (Rep. & Rec. at 35.)

### 4.   Due Process Violation:  Jury Issues

---

[9]Petitioner's mother told the court that Petitioner's present diagnosis was bipolar mood disorder, mixed mania and depression. (Sent. Tr. II. at 9-10.) Petitioner's grandmother told the court that a therapist who had worked with Petitioner "said in her letter at the time the original trial took place that she felt that William had indeed rehabilitated himself and that he excelled." (*Id.* at 12-13.)

1    Petitioner asserts as Ground Seven in his habeas petition that he was denied his due
2    process rights because the jury panel during voir dire was misinformed about their role in
3    sentencing and because he was denied full use of his peremptory challenges. (Pet. at 13.) The
4    Magistrate Judge has recommended that Petitioner failed to exhaust this claim in the state
5    courts, the claim is procedurally defaulted, and Petitioner has not established cause and
6    prejudice for the procedural default or a fundamental miscarriage of justice. (Rep. & Rec. at
7    37.)

8    In his Objection, Petitioner states that the Magistrate Judge "somewhat correctly
9    analyzed" this ground. (Obj. at 7.) Petitioner appears to contend, however, that this ground
10   should be reexamined, claiming that the Magistrate Judge "acknowledged that Petitioner
11   argued that his mental condition (i.e., incompetence) after his conviction and sentencing
12   excuses any state court procedural error."(*Id.*)

13   As shown by the Procedural History discussion in the Report and Recommendation,
14   Petitioner did not raise the jury issues in his direct appeal. (Rep. & Rec. at  4; *see* Ex. I,
15   Pet'r's Opening Appeal Br.) Petitioner raised the jury issues for the first time to the Arizona
16   Supreme Court when he sought and was denied discretionary review of the State Court of
17   Appeals decision affirming his conviction. (Ex. L, Pet. for Review at 10-11 and Ex. O,
18   Order.) *See* Ariz.R.Crim.P. 31.19. Petitioner did not raise the jury issues in his first post-
19   conviction proceeding. In his Notice of Post-Conviction Relief filed in the second
20   proceeding, Petitioner pro per mentioned, *inter alia*, that trial counsel's failure to raise issues
21   prejudiced him in a death penalty case. (Ex. BB, PCR Notice at 3.) Petitioner did not raise
22   the jury issues in his counseled petition filed in his second post-conviction proceeding. (Ex.
23   CC, PCR Pet.) Petitioner did not properly exhaust this ground. *See Casey v. Moore*, 386 F.3d
24   896, 918 (9th Cir. 2004) (federal habeas ground not fairly presented when raised "for the first
25   and only time to the state's highest court on discretionary review").

26   As previously discussed, the Magistrate Judge did not acknowledge that Petitioner had
27   argued in his Reply that his mental condition after conviction and prior to sentencing could
28   excuse the procedural default. (Rep. & Rec. at 37.) The Magistrate Judge noted that

1  Petitioner had argued in his Reply that he was entitled to equitable tolling of the statute of
2  limitations based on his mental condition as to any claim found untimely. (*Id*. at 37 n.14.)
3  Petitioner's approximate one-year period of incompetency in 2004-2005 does not establish
4  cause for not raising the jury issue grounds on direct appeal when represented by counsel,
5  in his pro per first state post-conviction petition, or in his counseled second state post-
6  conviction proceeding. *Schneider*, 674 F.3d at 1154 (mental condition not cause for
7  procedural default where petitioner on his own or with assistance remains able to apply for
8  state post-conviction relief).

9      The Court notes that Petitioner asserted in Ground Seven that had the jury panel been
10  correctly informed about its sentencing role, it would have allowed defense counsel to
11  meaningfully exercise peremptory challenges "in such a manner as to remove the most rabid
12  death-penalty proponents."(Pet. at 13.) The Supreme Court has found no support for the
13  conclusion that death qualification produces a conviction-prone jury and further has
14  determined that death qualification does not affect the rights of a non-capital defendant.
15  *Furman v. Wood*, 190 F.3d 1002, 1004-05 (9th Cir. 1999) (citing *Lockhart v. McCree*, 476
16  U.S. 162, 168-73 (1986), and *Buchanan v. Kentucky*, 483 U.S. 402, 420 (1987)). The Court
17  finds itself in agreement with the Magistrate Judge's rejection of Ground Seven.

18  **III.   CONCLUSION**

19      The Court has reviewed the arguments asserted in Petitioner's Objection. The Court
20  finds that Petitioner's arguments are without merit.

21      **IT IS ORDERED** overruling Petitioner's Objection to the Magistrate Judge's Report
22  and Recommendation (Doc. 29).

23      **IT IS FURTHER ORDERED** adopting the Magistrate Judge's Report and
24  Recommendation (Doc. 21) as supplemented by this Order.

25  / / /
26  / / /
27  / / /
28  / / /

1    **IT IS FURTHER ORDERED** denying a Certificate of Appealability and leave to

2  proceed *in forma pauperis* because Petitioner has not made a substantial showing of the

3  denial of a constitutional right.

4

5    DATED this 17th day of April, 2013.

6

7

8    _____

          Susan R. Bolton
          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28